UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LOUANGEL, INC.; dba LONGHORN STEAKHOUSE RESTAURANT, *et al*, | § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. C-12-147 |
| DARDEN RESTAURANTS, INC., *et al*, | § § § | |
| Defendants. | § § | |

## ORDER ON MOTION TO COMPEL

Before the Court is Plaintiffs' First Motion to Compel (D.E. 25), along with the Defendants' Response (D.E. 28), Plaintiffs' Reply (D.E. 31), and Defendants' Sur-Reply (D.E. 44). The transcript of the hearing on the Motion has also been filed. (D.E. 50). Plaintiff seeks to compel discovery of the Defendants' site selection criteria for opening a Longhorn Steakhouse restaurant in Corpus Christi, Texas and Defendants' sales figures for each of its 391 LongHorn Restaurants for the last 30 years. At the hearing held November 5, 2012, the Court DENIED the Motion with respect to the site selection criteria and took UNDER ADVISEMENT the request to compel discovery of sales figures. The Court now GRANTS IN PART and DENIES IN PART the Motion to Compel as to sales figures.

## INTRODUCTION

Because the parties have a Protective Order (D.E. 18) in place to protect trade secret and other confidential information, the issue for the Court is whether the requested discovery of specific sales data is relevant and admissible on any issue in this case or is

calculated to lead to the discovery of such admissible evidence.  Plaintiffs have identified four issues for which they contend the sales figures they seek are within the scope of discovery:

1. Whether the mark was used;
2. Whether the mark was abandoned;
3. The likelihood of confusion; and
4. The amount of damages.

Discussion of each of these issues follows.

**A. Use**

Under the Lanham Act, 15 U.S.C.A. § 1127, both "use" and "abandonment" refer to whether the mark is used in the ordinary course of trade.  Specifically with respect to services, such as the restaurant services here, the mark is used "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce."[1]  *Id.*  There is no threshold amount of trade or commerce required.

According to *Dallas Cowboys Football Club, Ltd. v. American's Team Props.*, 616 F.Supp.2d 622, 633 (N.D. Tex. 2009), a case on which Plaintiffs rely, the relevant transactions need only be legitimate business transactions:

> To establish priority, a mark must be used in a bona fide sale to create an impact on the buying public. 2 MCCARTHY supra § 16.7. "Nominal or token sales to relatives and personal friends do not constitute a bona fide commercial use of a trademark." *Id.* Secretive and non-open transactions are not proper usage, as the relevant class of prospective buyers is not exposed to the mark. *Id.* The Lanham Act specifically provides that "a mark shall be deemed to be in use in com-

---

[1]   There was some discussion at the hearing about whether an internal wall display of historical memorabilia constitutes "use."  *See Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355 (11th Cir. 1997). This issue is not before the Court in the context of the Motion to Compel and may be raised in a proper motion or at trial.

> merce . . . when it is placed in any manner on the goods . . .
> and the goods are sold or transported in commerce." 15
> U.S.C. § 1127.

While the *Dallas Cowboys* case adjudicated competing claims to a mark on goods rather than services, it is instructive with respect to what is considered commerce, which is common to the definition of use for both goods and services.

The only reference to the quantity of sales in the *Dallas Cowboys* opinion has to do with the determination of whether a mark has a "secondary meaning"—or is "suggestive" rather than "descriptive"—and whether it is "famous" for purposes of a dilution claim based on the volume of sales. Plaintiffs have not raised these arguments. Nonetheless, these arguments do not support the detailed discovery they seek in this case. The concept of a volume of sales sufficient to affect a legal change in the meaning of a mark involves overall sales, not a restaurant-by-restaurant, year-by-year historical quantification.

Plaintiffs also rely on *Sunkist Growers, Inc. v. Benjamin Ansehl Co.*, 229 U.S.P.Q. 147, 148 (T.T.A.B. 1985). That case addresses sales figures more specifically, stating:

> The Board has held that annual sales and advertising figures
> of recent years given in round numbers for specific goods
> bearing the involved mark(s) are proper matters for discovery
> since the information may well have a bearing upon the issues
> in an opposition or cancellation proceeding.

(footnote omitted). That opinion does not shed light on the specific issues for which the data is considered relevant. Importantly, however, it speaks in terms of "recent years" and "round numbers" and held that "annual gross sales figures" were relevant.

Defendants represented to the Court that they have produced consolidated sales figures for the last five years.

Furthermore, like *Dallas Cowboys*, the *Sunkist* case is a "goods" case.  And like *Dallas Cowboys*, the *Sunkist* case fails to support burdensome discovery that requires the responding party to quantify all historical sales for thirty years on a restaurant-by-restaurant basis.

### B. Abandonment

Plaintiffs call upon *Elvis Presley Enters, Inc. v. Capece*, 141 F.3d 188, 205 n.9 (5th Cir. 1998) (EPE), apparently to argue that sales data might uncover "nonuse" or abandonment.  According to *EPE*, "[T]he nonuse of the mark during the period while no nightclub was open may also break the period of continuous use required to establish the mark as incontestable under 15 U.S.C. § 1065."  *Id*.  Nothing in *EPE* addressed the discovery of specific sales figures.  It was undisputed that the nightclub had been closed for a period of time before being moved to a new location.

In this case, while some historical sales figures may have some bearing on the issue of continuous use, it is not the actual volume of sales of each individual restaurant that is relevant.  Instead, it is the absence of such sales that would be relevant.  To defeat a claim of nonuse or abandonment, Defendants would have to show a continuous record of commerce using the applicable marks for any single restaurant or combination of restaurants over the relevant time period to satisfy the Plaintiffs' right to discovery on this issue.

In other words, any continuous use of the marks in commerce, regardless of which restaurant generated the sales, would be relevant and sufficient.  Again, that would mean any sales in legitimate commerce and would not trigger an inquiry into the specific amount of each restaurant's historical sales.  According to *Sunkist, supra* at 148, a party may satisfy its discovery obligation by providing representative samples of data that would otherwise be unduly burdensome or harassing to assemble in its totality.

### C.  Confusion

Plaintiffs argue that sales figures are relevant to the issue of whether consumers would be confused by the Defendants' commercial activity.  The Fifth Circuit instructs as follows:

> The factors used by this Circuit in determining whether a likelihood of confusion exists are: (1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers.

*American Rice, Inc. v. Producers Rice Mill, Inc*., 518 F.3d 321, 329 (5th Cir. 2008) (quotations and footnote omitted).  "Strength of the plaintiff's mark" could address its earning power.

Plaintiffs also argue that sales figures will show that Defendant is the "giant" in the industry in support of a "reverse confusion" claim as the Defendant enters the Plaintiff's more restricted market.  According to this "reverse confusion" argument, as an alleged infringer, Defendants' use of Plaintiffs' mark results in confusion as to the origin of the Plaintiffs' product.  *See generally, Big O Tire Dealers, Inc. v. Goodyear Tire &*

*Rubber Co.*, 561 F.2d 1365 (10th Cir. 1977).  *See also, Great American Restaurant Co. v. Domino's Pizza L.L.C.*, 348 Fed. Appx. 907, 909, 2009 WL 3150310, *1 (5th Cir. 2009).

For these issues, Plaintiffs have failed to show how the question of "who is the giant" or "how strong is the mark" as to claims of recent infringement cannot be answered by the gross sales figures for the past five years.  Defendants have supplied those figures, rendering this issue moot as to any additional, more specific or more broadened, historic discovery.

**D. Damages**

Plaintiffs also relied on the matter of the calculation of damages as a basis for their sales figure discovery at the hearing.  However, they did not elaborate on how any damage issue requires the requested discovery other than "sales figures are used by experts in calculating damages."  According to the Complaint (D.E. 1, pp. 16-17), Plaintiffs have pled for their damages (presumably compensatory), additional damages for Defendants' willful acts, litigation expenses, and the cost of corrected advertising. None of the Plaintiffs' categories of damages appear to be based on historical restaurant-by-restaurant sales figures of the Defendants.

Defendants have counterclaimed for damages in the form of Plaintiffs' profits, Defendants' actual damages, trebled, and litigation expenses.  While the Defendants' "actual damages" presumably involve Defendants' sales, by failing to produce discovery responses for more than the last five years, Defendants are subject to a finding that they have waived any claim that would be based on evidence of sales from earlier years.  Fed. R. Civ. P. 26(a)(1)(A)(iii), 37(c)(1).

## CONCLUSION

Plaintiffs have failed to show that they are entitled to discovery of sales figures on a restaurant-by-restaurant basis for all of the Defendants' hundreds of restaurants going back 30 years.  However, Plaintiffs are entitled to discovery on the issue of continuous use, nonuse, and/or abandonment with respect to each of the marks in dispute and on the issue of Defendants' actual damages.  Accordingly, the Motion is GRANTED IN PART and DENIED IN PART as follows:

- The Court ORDERS Defendants to produce representative sales data that reflects the continuous commercial use (or lack thereof) of each mark on a mark-by-mark basis from the date of the claimed inception of each mark to the present, identifying the restaurant(s) and dates from which the data is taken.

- The Court ORDERS Defendants to produce consolidated annual sales data, referencing the mark(s) to which the sales are attributed, for each year that the Defendants claim to have incurred actual damages from Plaintiffs' alleged infringing conduct.

Defendants are to comply with this Order within 25 days of the date of this Order.

ORDERED this 26th day of November, 2012.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE