THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| LOUANGEL, INC. d/b/a LONGHORN STEAKHOUSE RESTAURANT and THE LONGHORN BOYS CORPORATION, d/b/a LONGHORN STEAK & ALE A Texas Corporation, and ANGELO PAPAKOSTAS, an Individual, § § § § § § § Plaintiffs, § v. § § DARDEN RESTAURANTS, INC., DARDEN CONCEPTS, INC., RARE HOSPITALITY MANAGEMENT, INC. d/b/a LONGHORN STEAKHOUSE, DARDEN CORPORATION, GMRI, INC., RARE HOSPITALITY INTERNATIONAL, INC., and DARDEN SV, INC. § § § § § § § § § § Defendants. § | CIVIL ACTION NO.: 2:12-cv-00147<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' *DAUBERT* MOTION TO EXCLUDE CERTAIN TESTIMONY
FROM DEFENDANTS' EXPERTS**

Now comes Plaintiffs, Louangel, Inc. d/b/a Longhorn Steakhouse Restaurant, The Longhorn Boys Corporation d/b/a Longhorn Steak & Ale, and Angelo Papakostas (hereinafter collectively called "Plaintiffs") in the above styled and numbered cause and respectfully move the Court under *Daubert* and its prodigy to exclude certain testimony from the Experts identified by Defendants (Darden Restaurants, Inc., Darden Concepts, Inc., Rare Hospitality Management, Inc., d/b/a Longhorn Steakhouse, Darden Corporation, GMRI, Inc., Rare Hospitality International, Inc., and Darden SV, Inc.).

1

I.  FACTS

A.  PLAINTIFFS

In 1989, Greek immigrants Angelo Papakostas and Billy Hartofilax started the Longhorn Steakhouse Restaurant in Corpus Christi, Texas.  A few years later, Plaintiffs opened a second restaurant in Corpus Christi, Texas under the name Longhorn Steak & Ale.  Other members of the immigrant Greek families either joined in, or left, the business.  Angelo Papakostas has been a principal member of these Greek families from the beginning of the first Longhorn Steakhouse restaurant in Corpus Christi to the present time.

As a result, Plaintiffs have established common law rights in the names "Longhorn Steakhouse Restaurant" and "Longhorn Steak & Ale," in the Corpus Christi area,[1] including the word "LONGHORN" when used for "restaurant services."

B.  DEFENDANTS

Concerning Defendants, in 1981 George McKerrow, Jr. had the concept of a Texas Roadhouse and started his first restaurant in Atlanta, Georgia, using the following mark:



The cartoon character was affectionately called "BONGO."  By getting other investors involved, the single restaurant was expanded and eventually went public in 1992 under the name

---

[1] "The Corpus Christi" area is defined as Nueces County and the surrounding counties.
[2] Dr. Isabella Cunningham is the current chair of the Department of Advertising and Public Relations at the University of Texas at Austin.
[3] *Daubert*, 509 U.S. at 600-01; *Anderson v. Bristol Myers Squibb Co.*, No. Civ.A. H-95-0003, 1998 WL 35178199, *3 (S.D. Tex. Apr. 20, 1998).
[4] FED. R. EVID. 702(a) (emphasis added).
[5] FED. R. EVID. 702.
[6] **Exhibit A**, Expert Report of Dr. Cunningham.
[7] Dkt. No. 135.
[8] *Id*. at 11.
[9] The "Expert Report of Robert F. Cissel" was previously filed with the Court as Docket No. 160, Exhibit 91.

2

"LONGHORN STEAKS, INC." At the time of going public, Defendants' predecessor knew that other restaurants used "LONGHORN" in their name.

In 1995, due to a downturn in their stock prices, a turnaround expert was brought in to Defendants' restaurants. Defendants' image was changed and Defendants' mark was changed to the following:



### C. KNOWLEDGE BY DEFENDANTS OF OTHERS USING LONGHORN

From at least as early as 1993 through 2010, Defendants did many searches involving the word "LONGHORN" for restaurant services. These searches turned up literally hundreds of restaurants in the United States that used the word LONGHORN in their name.

### D. CONFUSION BETWEEN THE NAMES

Starting in 2010, Defendants engaged in extensive advertising (including nationwide cable television, gift cards, and other various types of advertisement) to let the public in Corpus Christi, Texas, know about Defendants' LONGHORN RESTAURANTS. As a result of the extensive advertising, there has been immense confusion between Plaintiffs' previously established LONGHORN STEAKHOUSE RESTAURANT and LONGHORN STEAK & ALE in Corpus Christi, Texas, and Defendants' LONGHORN STEAKHOUSE. Confusion multiplied when Defendants started construction in Corpus Christi, Texas, for a new LONGHORN STEAKHOUSE less than a mile from Plaintiffs' LONGHORN STEAKHOUSE RESTAURANT. This has resulted in the confused public believing that Plaintiffs are opening

up the new LONGHORN STEAKHOUSE on South Padre Island Drive in Corpus Christi, Texas, when, in fact, the restaurant under construction is actually owned by Defendants.

### E.   REVERSE CONFUSION

As a result of the extensive television advertisement by Defendants, members of the public familiar with Plaintiffs' LONGHORN restaurants believe that Plaintiffs are associated with such advertising. The amount of advertising by Defendants is overwhelming, much more than the small amount Plaintiffs can afford for advertising. As a result, there is "reverse confusion", *i.e.*, the public believes Plaintiffs (who have superior common law rights in the Corpus Christi area) are in fact Defendants.

### II.   DAMAGES FOR REVERSE CONFUSION

The granddaddy of all reverse confusion cases is *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F.Supp. 1019 (D. Colo. 1976), *remanded by,* 561 F.2d 1365 (10th Cir. 1977), *cert. dismissed*, 432 U.S. 1052 (1978). This granddaddy case approved "corrective advertising" as a proper measure of damages. While the $19,600,000 award for compensatory and punitive damages in the *Big O Tire* case was reduced on appeal to $4,069,812, the concept of awarding corrective advertising for reverse confusion became firmly established in American Jurisprudence.

In keeping with the *Big O Tire* case, Plaintiffs hired marketing expert Dr. Isabella Cunningham[2] to give an opinion as to the amount of corrective advertising necessary to rebut the huge amount of confusion caused by Defendants' advertising. The report of Dr. Cunningham indicates the amount of corrective advertising necessary to correct the reverse confusion caused

---

[2] Dr. Isabella Cunningham is the current chair of the Department of Advertising and Public Relations at the University of Texas at Austin.

4

by $70,000,000 spent in cable television advertising by Defendants (plus gift cards), is $3,300,000. Dr. Cunningham's report is attached hereto as Exhibit "A".

### III.    ARGUMENTS AND AUTHORITIES

Under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the law concerning admissibility of expert opinions in Federal Courts changed.  Basically, the Court became a gatekeeper to determine the admissibility of expert testimony.[3]

In *General Electric v. Joiner*, 522 U.S. 136 (1997), the Court's role as a gatekeeper was strengthened by ruling that the standard for overturning the Court's opinion on admissibility of expert testimony was abuse of discretion.  Then in *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court held that *Daubert* applies to all expert evidence.

Following this series of Supreme Court decisions, FED. R. EVID. Rule 702, as amended, states the following:

> A witness who is qualified as an expert by <u>knowledge</u>, <u>skill</u>, <u>experience</u>, <u>training</u> or <u>education</u> may testify in the form of an opinion or otherwise if:
>
> > (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue…[4]

### A.    DEFENDANTS' REBUTTAL EXPERT KEITH R. UGONE, Ph.D. IS NOT QUALIFIED TO GIVE HIS OPINION

Corrective advertising is the measure of damages in the present case. Plaintiffs have a highly qualified marketing expert in Dr. Isabella Cunningham who will testify on the amount of corrective advertising that is necessary to overcome the reverse confusion caused by Defendants.

---

[3] *Daubert*, 509 U.S. at 600-01; *Anderson v. Bristol Myers Squibb Co.*, No. Civ.A. H-95-0003, 1998 WL 35178199, *3 (S.D. Tex. Apr. 20, 1998).
[4] FED. R. EVID. 702(a) (emphasis added).

Defendants, on the other hand, have designated Dr. Keith R. Ugone, Ph.D. to testify on damages and have submitted his report, which is attached hereto as Exhibit "B." Dr. Ugone has excellent qualifications in <u>economics</u> and has testified numerous times as to various damage models. However, Dr. Ugone has no "knowledge, skill, experience, training, or education"[5] to testify on corrective advertising. That requires someone with the experience or training in marketing, such as Dr. Cunningham. Dr. Cunningham is a Professor of Marketing at the University of Texas at Austin, and is currently serving as the chair of the department.[6]

The Fifth Circuit has held that "to qualify as an expert, the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for the truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004).

When testimony is not scientific in nature, qualifications may be better judged by personal knowledge, work experience, or training. *Redding Linden Burr, Inc. v. King*, No. H-07-2925, 2009 WL 277531, *2 (S.D. Tex Jan. 2, 2009) (citing FED. R. EVID. 702 and *Kumho Tire)*. If relying on experience, "the witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts." *Id*.

In the present case, while he is a well qualified economist, Dr. Ugone has no knowledge, work experience, or training in the area of corrective advertising. The entire report of Dr. Ugone should be excluded.

B. **EXPERT REPORT OF ROBERT F. CISSEL IS ONLY ON MATTERS OF LAW**

---

[5] FED. R. EVID. 702.
[6] **Exhibit A**, Expert Report of Dr. Cunningham.

In its March 22, 2013 "Order on Motion for Partial Summary Judgment on Tacking,"[7] the Court stated the following:

> Defendants offer the opinions of Robert Cissel, a trademark legal expert, and David Stewart, a Professor of Marketing and Law. D.E. 106-2, 106-3. Despite their impressive credentials, these retained witnesses offer nothing more than their own subjective conclusions based upon their view of the trademarks themselves and not upon anything but the most abstract principles of consumer conduct. They cannot attest to any actual consumer response to Defendants' particular change in trademarks.[8]

Plaintiffs do not challenge the qualification of Robert F. Cissel as a trademark legal expert.[9] However, as the Court correctly noted, all Mr. Cissel did was give his "subjective conclusions" based upon his view of the marks. More importantly, the Expert Report of Mr. Cissel gave his legal opinions, which are not the proper subject of expert testimony because they do not assist the trier of fact in understanding the evidence.[10] Instead, Mr. Cissel merely tells the trier of fact what result to reach.

Federal courts have consistently held that legal opinions are not a proper subject of expert testimony because they do not assist the trier of fact in understanding the evidence. *See Estate of Sowell v. United States*, 198 F.3d 169, 171-72 (5th Cir. 1999) (forbidding expert testimony as to whether a fiduciary was acting "reasonably"); *Askanase v. Fatjo*, 130 F.3d 657, 672-73 (5th Cir. 1997) (holding that the trial court properly excluded expert legal opinions as to whether defendants breached various fidicuary duties); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (noting that expert testimony must bring to the trier of facts more than lawyers can offer in argument); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (holding that an

---

[7] Dkt. No. 135.
[8] *Id*. at 11.
[9] The "Expert Report of Robert F. Cissel" was previously filed with the Court as Docket No. 160, Exhibit 91. Because of its size and to reduce the amount of paper, the Expert Report of Robert F. Cissel will not be included a second time herein.
[10] FED. R. EVID. 702(a).

expert's testimony on the contributory negligence of a party was a legal conclusion and therefore was an invasion of the trier of fact's role in deciding the case).

Lawyer experts cannot opine as to what law governs an issue or what the applicable law means because such opinions impermissibly intrude upon the role of the court. *Askanase*, 130 F.3d at 673; *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) ("an expert may never render conclusions of law"); *Specht v. Jensen*, 853 F.2d 805, 808-09 (10th Cir. 1988) (holding that the trial court erred in allowing expert legal opinions regarding warrantless searches because such opinions improperly instructed the jury on how to decide the case). As perhaps best stated in *Burkhart v. Washington Metropolitan Area Transit Authority*, "each courtroom comes equipped with a legal expert […] called a judge." 112 F.3d. 1207, 1213 (D.C. Cir. 1997).

This is not the first time Mr. Cissel has had his expert report challenged. In *Experience Hendrix, LLC v. HendrixLicensing.com, Ltd.*, cause number C09-285Z, before the District Court for the Western District of Washington, Seattle Division, Mr. Cissel's report was excluded. In excluding Mr. Cissel's testimony, the Court stated the following:

> Defendant's Motion to Exclude the Testimony of Robert L. Cissel is GRANTED. Mr. Cissel will not be allowed to testify as an expert witness at trial. The Court will instruct the Jury concerning the law.[11]

Further, binding Fifth Circuit precedence holds and maintains the propriety of exclusion of expert testimony on legal conclusions or legal opinions. For example, in *Askanase v. Fatjo*, *supra*, the plaintiffs' legal expert testified that defendants had breached various fiduciary duties to the corporation. 130 F.3d at 673. The Fifth Circuit upheld the trial court's finding that this testimony was an inadmissible legal opinion because "our legal system reserves to the trial judge

---

[11] **Exhibit C**, Minute Order, April 19, 2012, *Experience Hendrix* at 1, Dkt. No. 116.

the role of deciding the law."[12]  Similarly, in *Estate of Sowell*, the Fifth Circuit upheld the trial court's exclusion of the expert testimony from a lawyer regarding what a reasonable fiduciary would do when confronted with facts identical to those in the case.  198 F.3d at 171-72.  The court, reiterating its holding in *Askanase*, explained that "if an expert were allowed to testify to legal questions, each party would find an expert would state the law in the light most favorable to its position." *Id*. at 172.

Clearly, as the case law strongly holds, Mr. Cissel should not be permitted to testify on his legal conclusion or legal opinions.

## C. THE EXPERT OPINION OF DAVID W. STEWART, Ph.D. SHOULD BE EXCLUDED

Just as the Court recognized the impressive credentials of Dr. David Stewart, the Court indicated that Dr. Stewart offered "nothing more than [his] own subjective conclusions based upon [his] view of the trademarks themselves and not upon anything but the most abstract principles of consumer conduct."[13]  In an examination of the "Expert Report of David W. Stewart, Ph.D." (a copy of which is attached as Exhibit "D"), one will quickly see that the Court was correct in its analysis although the analysis was based on the declaration of Stewart, not the entire expert opinion.[14]

While the opinion of Dr. Stewart is twenty-two (22) pages long with forty-seven (47) pages of Exhibits, the opinion is summarized in the "Conclusion," which states the following:

> The evolution of the LONGHORN mark is similar to the evolution of many brand and corporate marks, including Plaintiffs' own marks.  While some elements have been modified over time to make them more contemporary, the critical identifying elements have remained the same.  Thus, the association of the LONGHORN mark with steakhouse restaurants among consumers should persist over time even as that mark evolves.

---

[12] *Id*. (citing *Specht v. Jensen*, 853 F.2d 805, 808-09 (10th Cir. 1988)).
[13] Dkt. No. 135 at 11.
[14] Dkt. No. 106-3 (Declaration of David W. Stewart, Feb. 19, 2013).

> Specifically, based on my substantial experience as a marketing expert and extensive knowledge of corporate branding, it is my opinion that: (i) the commercial impression conveyed by all registered iterations of Defendants' LONGHORN mark is the same; and (ii) the commercial impression conveyed by the LONGHORN mark depicted in exterior signage at one LongHorn Steakhouse restaurant in Jacksonville, Florida is the same as the earliest two forms of Defendants' LONGHORN mark. It is also my opinion that Plaintiffs' changes to their marks have been more substantial than Defendants' changes to their mark.[15]

As can be seen from the above quoted conclusion, Judge Ramos is correct when she states "these retained witnesses offered nothing more than their own <u>subjective conclusions</u> based upon their view of the trademarks and sales and not upon anything but the most abstract principals of consumer conduct."[16] An Expert giving their "subjective conclusions" does not "help the trier of fact to understand the evidence or to determine the fact in issue," as is required under FED. R. EVID. Rule 702.

While Dr. Stewart may be qualified to give an opinion on reverse confusion, the same as Dr. Cunningham did, Dr. Stewart in his expert opinion addressed neither reverse confusion nor corrective advertising. The opinion of Dr. Stewart adds nothing to the decision to be made by the trier of fact.

### IV.    PRIOR DECLARATIONS

Defendants have previously submitted declarations of Dr. David W. Stewart and Mr. Robert F. Cissel in support of their "Opposition to Plaintiffs' Partial Motion for Summary Judgment on Tacking."[17] The Court has already issued an Order Granting Plaintiffs' Motion for Summary Judgment on Tacking.[18] The declarations of Dr. Stewart and Mr. Cissel substantially

---

[15] Exh. D at 22.
[16] Dkt. No. 135 at 11.
[17] Dkt. No. 106, Exhibit 106-2 (Declaration of Robert Cissel in Support of Defendants' Opposition to Plaintiffs' Partial Motion for Summary Judgment on Tacking, February 19, 2013) and Exhibit 106-3 (Declaration of David W. Stewart in Support of Defendants' Opposition to Plaintiffs' Partial Motion for Summary Judgment on Tacking, February 19, 2013).
[18] Dkt. No. 135.

mirror the substance of their respective expert reports.[19] As such, Plaintiffs clarify that their requested relief in this motion is not limited to just Defendants' experts' live testimony but also includes testimony through declaration, deposition, and expert report.

## V.     CERTIFICATE OF CONFERENCE

On June 3, 2013, Plaintiffs' counsel, M. Villarreal, conferred via emails with Defendants' counsel, H. Saporito, pursuant to Local Rule 7.1(D) and have been unable to reach an agreement regarding the disposition of this Motion.  Defendants oppose this motion.

## VI.     CONCLUSION

For the above reasons, the expert opinions of Dr. Ugone, Mr. Cissel and Dr. Stewart should be excluded, or at the very least, be extremely limited. Dr. Ugone is not qualified to testify on corrective advertising for reverse confusion.  Mr. Cissel wants to testify on matters of law on which the Court will instruct the Jury.  Dr. Stewart offers nothing more than his subjective conclusions on the appearance of the trademarks, not upon an evaluation of consumer reaction.

## VII.     PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request the Court grant Plaintiffs' *Daubert* Motion and exclude Defendants' experts' testimony in either declaration, deposition, expert report, or live format, and grant Plaintiffs such further relief, whether at law or in equity, that the Court deems appropriate.

---

[19] *Compare* Dkt. No. 106-2 (Declaration of Robert Cissel in Support of Defendants' Opposition to Plaintiffs' Partial Motion for Summary Judgment on Tacking, February 19, 2013) *with* Dkt. No. 160-9 (Exhibit 91 - Expert Report of Robert F. Cissel, April 1, 2013, attached to Defendants' Sur-Reply in Support of Their Opposition to Plaintiffs' Motion for Partial Summary Judgment on Abandonment – Dkt. No. 160); *compare* Dkt. No. 106-3 (Declaration of David W. Stewart in Support of Defendants' Opposition to Plaintiffs' Partial Motion for Summary Judgment on Tacking, February 19, 2013) *with* **Exhibit D** (Expert Report of David W. Stewart, Ph.D., April 1, 2013).

Respectfully submitted:

GUNN, LEE & CAVE, P.C.
300 Convent St., Suite 1080
San Antonio, Texas 78205
Tel: (210) 886-9500
Fax: (210) 886-9883

　　/s/ Ted D. Lee
Ted D. Lee
State Bar No. 12137700
Email: tlee@gunn-lee.com

ATTORNEY FOR PLAINTIFFS
LOUANGEL, INC. d/b/a LONGHORN
STEAKHOUSE RESTAURANT and THE
LONGHORN BOYS CORPORATION,
d/b/a LONGHORN STEAK & ALE

## CERTIFICATE OF SERVICE

　　I hereby certify that on the 3rd day of June 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Robert L. Lee
Holly Hawkins Saporito
Nadya Munasifi Sand
William C. Hymphreys, Jr.
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree St.
Atlanta, GA 30309-3424
holly.saporito@alston.com
nadya.sand@alston.com
bob.lee@alston.com
bill.humphreys@alston.com

Zach T. Mayer
KANE RUSSELL
COLEMAN & LOGAN PC
1601 Elm Street, Suite 3700
Dallas, Texas 75201
zmayer@krcl.com

Michael P. Ridulfo
Caroline C. Pace
KANE RUSSELL
COLEMAN & LOGAN PC
919 Milam Street, Ste. 2200
Houston, Texas 77002
mridulfo@krcl.com
cpace@krcl.com

Robert J. Sigler
Christopher A. Bandas
BANDAS LAW FIRM, P.C.
500 N. Shoreline Blvd., Ste. 1020
Corpus Christi, TX  78471
rsigler@bandaslawfirm.com
cbandas@bandaslawfirm.com

Ben A. Donnell
DONNELL, ABERNETHY & KIESCHNICK, P.C.
Tower II, Suite 400
555 N. Carancahua Street
Corpus Christi, Texas 78401-0817

bdonnell@dakpc.com
Attorneys for Plaintiffs

                                            /s/ Ted D. Lee
                                            Ted D. Lee