UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LOUANGEL, INC.; dba LONGHORN STEAKHOUSE RESTAURANT, *et al*, | § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:12-CV-00147 |
| | § | |
| DARDEN RESTAURANTS, INC., *et al*, | § § | |
| Defendants. | § | |

### ORDER ON MOTION FOR
### PARTIAL SUMMARY JUDGMENT ON ABANDONMENT

Before the Court is "Plaintiffs' Motion for Partial Summary Judgment on Defendants' Abandonment of Early Marks" (D.E. 103). In connection with their response to this Motion, Defendants filed their Motion to Strike the Declaration of Ronald B. Whitten (D.E. 132), a Declaration that was attached as summary judgment evidence to Plaintiffs' Motion. For the reasons set out below, the Motion to Strike is DENIED and the Motion for Partial Summary Judgment is GRANTED.

### FACTS

In 1981, Defendants operated restaurants named "Long Horn Steaks" in states in the Eastern part of the country. Defendants registered what will be referred to as the "Bongo" style trademark for its steak restaurant, using the name Long Horn Steaks as three separate, stacked words in a bold, chunky font and substituting Bongo,[1] a baby-faced cartoon cow's head with vertical horns, as the "o" in "Long" and a cartoon t-bone

---

[1] The cartoon cow was named Bongo after a contest. D.E. 124-3, p. 5.

steak as the "t" in "Steaks," followed in 1992 by a similar horizontal version of the trademark:

 

This trademark will be referred to as the "Bongo" trademark. In 1995, wanting a more "upscale" image and with major expansion plans, Defendants broadened their menu and registered a new trademark using a minimalist or more abstract rendering of the outline of a steer's head with horizontal horns, and with "LongHorn" as one word over "steakhouse" in a sleeker font:

 

This trademark will be referred to as the "Minimalist" trademark.

In between the Defendants' Bongo and Minimalist trademark registrations, Plaintiffs began the use of their own logos in 1989, for their "Longhorn Restaurant" with a steer's head rendering as a prominent design feature. The steer's head design has horizontal horns and is somewhat more detailed than Defendants' Minimalist logo, but not as cartoonish as the Defendants' Bongo logo:



Plaintiffs operated their restaurants exclusively in the Corpus Christi, Texas area.

This lawsuit was precipitated by Defendants' plans to expand into the Corpus Christi market, with local advertising and the sale of Defendants' LongHorn Steakhouse gift cards at Corpus Christi retail stores. Both Plaintiffs and Defendants have alleged trademark infringement claims against each other. Plaintiffs seek partial summary judgment that Defendants abandoned their 1981 and 1992 Bongo trademarks, thereby eliminating any claim to infringement of those marks and rendering Plaintiffs' trademark prior in time to the Minimalist trademarks.

Plaintiffs have supplied the Court with the Defendants' corporate representative testimony, which explains a concerted effort in 1994-95 to remodel the restaurants to eliminate the Bongo or roadhouse styling and adopt a more upscale image. They removed neon signs and taxidermy, with the exception of a steer head over the bar. D.E. 103-4, pp. 4-5. They changed red vinyl tablecloths and red cloth in the booths to tan or earth-tone fabrics. D.E. 103-7, pp. 8-9. Instead of neon lighting, they changed to warmer, golden-toned lighting. *Id*., p. 9-10. They changed the exterior signage from the Bongo trademark to the Minimalist trademark. *Id*., p. 11. Specifically, Shelly Welch testified that the effort was to "evolve the brand," modernize it, and rethink market strategy to create broader appeal. D.E. 103-3, p. 8.

This was confirmed by George McKerrow, Jr.  They "reimaged" "lots of things," including uniforms, china, décor, food offerings, size of the buildings as well as the logo. D.E. 103-4, p. 4.  It was an "evolution of the brand to make it and keep it competitive" and to avoid confusion with the earlier iteration of the restaurant.  *Id*.  They performed a chain-wide renovation changing the dark rustic paneled interior to a brightly lit beige interior.  *Id*., p. 5.  More specifically, "The process was considered to be bringing the brand more upscale and more universally acceptable."  *Id*., p. 4.

In what Defendants' representatives admit was an "evolution of the brand," they intentionally undertook to change the commercial impression of their trademark.  They renovated existing restaurants, removing the Bongo trademark from signage, menus, and other items in favor of those bearing the Minimalist logo.  According to their Annual Report of 1997, this process took place over three years, beginning in 1994 and ending in 1997.  D.E. 103-6, p. 8.  *See also*, D.E. 103-4, pp. 4-5; 103-7, p. 11.  According to Shelly Welch, who served as Brand Manager and was thereafter promoted to her current position as Senior Vice-President-Brand Management, she began work at the Defendants' organization in 2007 and had not seen the Bongo trademark in use for exterior signage, menus, or uniforms during her tenure.  D.E. 103-7, pp. 3-6.

Defendants maintain that the Bongo trademark was in use within the last three years,[2] citing:  (1) the doctrine of tacking between the Bongo trademark and the Minimalist trademark; (2) internal corporate documents, anniversary celebrations, and

---

[2] Defendants recite a number of usages that extended into the 2000s, but which ended before 2010.  Because nonuse within three years is the test, those usages are irrelevant to the current inquiry.

training programs; (3) photographs and a wine menu hanging on the walls of two of their restaurants; (4) redemption of a gift certificate; (5) a restaurant that closed in June, 2010; and (6) exterior signage for their Jacksonville, Florida restaurant that is in current operation. As demonstrated below, none of these claims involve the requisite use to avoid a finding of abandonment.

## DISCUSSION

### A. The Burden and Standard of Proof for Determination of Abandonment

Pursuant to the Lanham Act, a trademark shall be deemed abandoned "[w]hen its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be *prima facie* evidence of abandonment." 15 U.S.C. § 1127. According to the Fifth Circuit, the initial burden of proof is on the party claiming abandonment. Upon proof of nonuse, the owner of the mark has the burden to demonstrate that circumstances do not justify the inference of intent not to resume use. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 293 (5th Cir. 2004); *Exxon Corp. v. Humble Exploration Co.*, 695 F.2d 96, 99 (5th Cir. 1983). Any such intent to resume use must be shown to have been formulated or maintained within the three-year window. *E.g., ITC Limited v. Punchgini, Inc.*, 482 F.3d 135, 149 n.9 (2nd Cir. 2007).

Defendants seek to elevate the Plaintiffs' hurdle through application of a "burden of strict proof," citing *American Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619, 624 (5th Cir. 1963). However, *American Foods* does not apply here. In *American Foods*, the district court was presented with a question of likelihood of confusion with respect to a request for injunctive relief. The alleged abandonment, having to do with the strength or

weakness of the trademark, was based on issues regarding naked licensing—whether the trademark owner had licensed or allowed others to use the trademark and thereafter failed to control the quality of the goods. *Id*. at 624-25. The question had been fully tried with the court issuing findings of fact regarding "naked licensing."

The fact that the "strict proof" burden relates to the particular issues involved in "naked licensing" and not to the issue of nonuse here, as Plaintiffs argue, is clarified by the language in other cases that cite *American Foods*, such as *Taco Cabana International, Inc. v. Two Pesos, Inc*., 932 F.2d 1113, 1121 (5th Cir. 1991), *aff'd*, 505 U.S. 763, 112 S.Ct. 2753 (1992), also cited by Defendants: "But Two Pesos faces a stringent standard because finding a 'naked license' signals involuntary trademark abandonment and forfeits protection." *Taco Cabana*, 932 F.2d at 1121 (citing *American Foods*). "Abandonment due to naked licensing is 'involuntary' because, unlike abandonment through non-use, referred to in subsection 1127(1), an intent to abandon the mark is expressly not required to prove abandonment under subsection 1127(2)." *Exxon Corp. v. Oxxford Clothes, Inc*., 109 F.3d 1070, 1080 (5th Cir. 1997).

Thus the Defendants' argument for a strict burden does not apply because the source of the argument involves a different set of issues.[3] When interpreting the facts to find an unintentional, involuntary abandonment under "naked licensing," a higher burden of proof for forfeiture actions is appropriate. But no such reasoning requires the same

---

[3] The same analysis disposes of the holding in *Moore Business Forms, Inc. v. Ryu*, 960 F.2d 486, 489 (5th Cir. 1992). The district court's application of a "strict burden" to intentional abandonment in *Re/Max Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F.Supp.2d 679, 714 (S.D. Tex. 2009) appears to be an anomaly, applying the holdings of involuntary abandonment cases to a case of voluntary abandonment.

strict burden of proof when the issue is a voluntary or intentional relinquishment of a trademark.

Plaintiffs claim to have demonstrated nonuse for far more than three years—since 1995. The required three-year window that they claim, however, is from May 11, 2009 to May 11, 2012. Defendants' corporate representative was unable to recite any usage of the Bongo trademark in that three-year window; Defendants' discovery responses indicate that no sales have taken place using the Bongo trademark in the last five years; and Defendants have failed to renew their second Bongo trademark within the time deadline for doing so. D.E. 103, pp. 8-9.

Defendants have asserted certain recent usage—including at the present time—and correctly recite that even "minor or sporadic use" will defeat a claim of abandonment. *Equibrand Corp. v. Reinsman Equestrian Products, Inc.*, No. 3:07-CV-0536-P, 2007 WL 1461393, *7 (N.D. Tex. May 17, 2007). Defendants argue that, contrary to Plaintiffs' representation, the second Bongo trademark does not require renewal until June, 2013 and that it will be renewed by that deadline. D.E. 126-8. They further fault Plaintiffs for failing to credit evidence disclosed in supplemental discovery responses.

Thus, this action focuses on whether the claimed usages qualify to protect a trademark from abandonment, where " '[u]se' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. Defendants further assert concrete plans to use the Bongo trademarks in the near future, thus exhibiting an intent to resume after any dormancy in use. Each of these arguments will be addressed below.

### B. Tacking

One of the Defendants' arguments for claiming current usage of the Bongo trademark is their claim that the Minimalist trademark tacks on to the Bongo trademark so that their current Minimalist signage and logo-bearing items constitute use of the Bongo trademark as well. This Court has previously considered Defendants' argument that their Minimalist and Bongo trademarks can be tacked in order to relate backward and take advantage of the 1984 trademark registration. The Court has rejected that claim and the analysis will not be repeated here. *See* Order on Motion for Partial Summary Judgment on Tacking (D.E. 135). The Court holds that Defendants may not rely on the doctrine of "tacking" to make current uses of their Minimalist trademark qualify as uses of the Bongo trademark.

### C. Internal Corporate Documents, Anniversary Celebrations, and Training Programs

A trademark, to be subject to protection, must be "used in commerce," which is defined by the Lanham Act as follows:

> For purposes of this chapter, a mark shall be deemed to be in use in commerce—
>
> (1) on goods when--
>
> > (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
> >
> > (B) the goods are sold or transported in commerce, and

> (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127.

In demonstrating "use in commerce," Defendants argue that the Bongo trademark is displayed in a 2010 Annual Report that is available at their website: www.darden.com. That Annual Report is available under a tab for "Investors," after selecting the "Financial Information" link. It shows pictures of restaurants using the Bongo trademark, juxtaposed against pictures of the restaurant using the Minimalist trademark in a series of pages devoted to the evolution of the company's brands.

Defendants have not demonstrated that anything about the Annual Report or those pictures has anything to do with a commercial transaction involving the sale or advertisement appurtenant to the sale of goods or services provided by the Defendants' restaurants. *See generally*, *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 1356 (11th Cir. 1983) (discussing the nature of "commerce" subject to federal regulation through the Lanham Act). "[A] mark is used in commerce only if it accompanies services rendered in commerce." *Sensient Technologies Corp. v. Sensory-Effects Flavor Co.*, 613 F.3d 754, 762 (8th Cir. 2010) (quoting *Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*, 329 F.3d 359, 364 (4th Cir. 2003)).

At least one court has already noted that use of a trademark in an Annual Report is insufficient to show "use in commerce." *Stop & Shop Supermarket Co. v. Big Y Foods, Inc.*, 943 F.Supp. 120, 122 n.2 (D. Mass. 1996). Acknowledging the past in corporate anniversary celebrations with a "Journey book" displaying the old trademark, displays in conjunction with Manager in Training presentations, or "Brand Books" and "Brand Videos" in new manager onboarding processes are all internal company uses and get no closer to a commercial transaction with customers or the identification of the source of goods or services for restaurant guests than does an Annual Report. Exhibit 52, D.E. 130-1, -2, -3. The Court holds that internal corporate uses do not constitute "commercial uses" to defeat a claim of abandonment.

### D. Photographs and a Wine Menu as Interior Décor.

Defendants' first Bongo trademark is on display in two of its restaurants located in Georgia. Plaintiffs characterize this display as nothing more than memorabilia that is part of the western décor on the walls of the restaurant. Plaintiffs' investigator, Ronald B. Whitten went to the restaurant as a customer, photographed the items hanging on the wall, and inquired about the wine list and whether he could order from it, learning that he could not.

Defendants have objected to Whitten's affidavit testimony and photographic exhibits as they were obtained without Defendants' permission and were, according to Defendants, unauthorized *ex parte* contacts. Motion to Strike, D.E. 132 (citing Fed. R. Civ. P. 30, 34). Defendants cite a number of cases, none of which involve entering a public business and making observations as any guest of that business could do. *See In*

*re Tucker*, 224 F.3d 766 (5th Cir. 2000) (attorney sent employee to harass debtor and obtain a reaffirmation agreement in violation of the automatic stay of bankruptcy proceedings and as an *ex parte* contact with represented party); *United States v. Reed*, 106 F.3d 396 (5th Cir. 1997) (attorney made deliberate misrepresentations to the court and, additionally, spoke with the criminal defendant without counsel present specifically to induce a plea agreement); *United States v. Thomas*, 342 B.R. 758, 761 (S.D. Tex. 2005) (party did not actually contact the opposing, represented, party or its counsel; issue was failure to provide notice); *In re Stomberg*, No. 10-41603, 2013 WL 142396, *20 (S.D. Tex. Jan. 10, 2013) (no relevant facts).

Plaintiffs respond that Rules 30 and 34 recite that a party "may" file formal discovery requests regarding entry upon land for the purpose of obtaining discovery regarding another party's facility. However, formal discovery is not the only method permitted. *Simington v. Menard, Inc.*, 210-CV-00269, 2012 WL 3288745, *4 (N.D. Ind. Aug. 9, 2012). Nothing in the Federal Rules of Civil Procedure bars parties from access to public places, even if the public place is a subject of the litigation.

The Court finds that there is no violation of the rules of procedure when a property is open to the public and the person entering the property to make observations behaves in no other way than any other member of the public would behave. Furthermore, the evidence that Whitten obtained is consistent with Defendants' corporate representative's testimony (D.E. 103-7, 137), is not tainted by "*ex parte*" contact, and is of a type commonly admitted. *E.g.*, *Hubbard v. Barnhart*, 225 Fed.Appx. 721, 723, 2007 WL 870393, *1 (9th Cir. March 23, 2007); *Dehne v. Hill*, 220 Fed.Appx. 730, 732, 2007 WL

570420, *2 (9th Cir. February 20, 2007). The Court DENIES the Defendants' Motion to Strike.

Plaintiffs are correct that items of historical memorabilia or decoration do not present evidence of a trademark's use in commerce. *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 361, *opinion modified on reh'g*, 122 F.3d 1379 (11th Cir. 1997) (per curiam). To be a valid service mark, it must be "used to identify or distinguish the services being offered." *Id*. The *Lone Star* court held that the interior wall décor was not a commercial use as a matter of law. *Id*.

Defendants challenge the holding of the *Lone Star* case, saying that it was remanded on the issue of abandonment and settled before final resolution, thus eliminating any precedential effect of the relevant holding. D.E. 125, p. 26. The opinion on rehearing expressly modifies and supplements the earlier opinion, but does not in any way alter the holding relied on above. 122 F.3d at 1381-82. Thus as a subsidiary matter that impacts the remaining abandonment issues, it would have constituted "law of the case" had the case not been settled. *E.g.*, *Crowe v. Smith*, 261 F.3d 558, 562 (5th Cir. 2001). This Court holds that nothing about the subsequent history of the *Lone Star* case called that court's ruling (declining to treat interior décor as a trademark usage) into question.

Defendants seek to distinguish this case from *Lone Star* by characterizing the décor at issue here as prominent interior signage. They liken the use of the historical photographs and wine menu to interior "signs," which could be used to maintain older trademarks, such as in the case of trademark renewal specimens offered for the "I'm

12 / 19

Speedee" for McDonald's (D.E. 130-12, -13), the "Big Boy" figure for Elias Brothers Restaurants (D.E. 130-14, -15), the block "Taco Bell" sign for that restaurant (D.E. 130-16, -17), and the "Edibles and Elixirs" sign for the Applebee's Restaurant (D.E. 130-18m -19).

However, in each of those instances, the trademarks were presented in a sign format, in which attention is drawn to the trademark as an active element in the transaction of goods or services offered. Here, the trademarks appear in a cluster of items hung on the walls with other western décor offering ambiance, but not source identification. The displays of the Bongo trademark in the décor do not welcome the guests to this restaurant, do not identify this restaurant to the public, and do not identify goods or services for commercial transactions.

While there is some argument over whether wine could be ordered from the Bongo-bearing wine menu hanging on the wall—at the prices listed there—the simple answer is that it could not. D.E. 137. The items are nothing but décor. The Court holds that the décor items do not represent trademark usage that would defeat the Plaintiffs' abandonment claim.

### E. Redemption of Gift Certificate

Defendants direct the Court to their recent redemption of a gift certificate bearing the Bongo trademark. While the certificate was redeemed within the last three years, it was issued July 13, 1993. D.E. 126-1; 127-8. Gift certificates are now gift cards bearing the Minimalist trademark. There is no evidence that any Bongo-styled gift certificates or cards have been issued in the relevant three-year window.

The parties have not offered any authorities regarding gift certificate redemption as a "use in commerce" and the Court has not found any in an independent search. Nonetheless, it is clear that the restaurant engages in the transaction relevant to the maintenance of its business at the time it receives payment and issues the certificate or card. The business does not control the exact time of the customer's redemption of the gift. As businesses change and close, customers take their chances on receiving the value represented by the gift certificate or card.

Under such circumstances, focusing on the relevant transaction being that by which goods or services are sold, the date of redemption is immaterial. The Court holds that the redemption of the 1993 gift certificate does not reflect usage of the Bongo trademark within the three-year window. Any other treatment would allow the issuance of gift cards to maintain trademarks *ad infinitim*, as it is commonly known and reported by the National Retail Federation that a percentage of gift cards may never be redeemed, but remain outstanding. "Perhaps the greatest benefit to retailers is that a sizable number of consumer gift card purchases are never redeemed."[4]

**F. Exterior Signage on Florida Restaurants.**

Defendants represent that the words, "LongHorn Steaks" or "Longhorn Steakhouse" remained on exterior signage for an Ocala, Florida restaurant until June, 2010. D.E. 125-2; 126-1, p. 10; 126-11, pp 5-6. Defendants have also submitted pictures of a "LongHorn Steaks" sign that is still standing near a Jacksonville, Florida restaurant. The record reflects that neither of those alleged trademark usages included the Bongo

---

[4] http://www.nrf.com/modules.php?name=News&op=viewlive&sp_id=1090&parent_id=958&peer_rev=1&nrf_or=0

face and only the latter includes the t-bone steak substitute for the "t" in "steaks."  D.E. 126-1, pp. 5, 10; 126-10, 126-12.

No pictures of the Ocala restaurant have been supplied.  One picture of the Jacksonville restaurant sign includes the actual restaurant in the background.  D.E. 126-11, reproduced at D.E. 125, p. 11.  The trademarks on the free-standing sign nearer the restaurant and on the restaurant itself are Minimalist renderings.  The sign that includes the other businesses at that location is the only sign that uses any part of the Bongo trademarks.

Because the signs that Defendants rely upon for usage currently or within the three-year window do not include the steer's head of the Bongo trademark, they preemptively suggest that it is a non-materially altered version of their trademark.  Certainly, if this version of the trademark is not materially altered, its use as exterior signage could be sufficient to defeat the abandonment claim.[5]  *Patsy's Italian Restaurant, Inc. v. Banas*, 658 F.3d 254, 268 (2nd Cir. 2011) (exterior sign on restaurant is a "use in commerce"); *Cumulus Media, Inc. v. Clear Channel Communications*, 304 F.3d 1167, 1174-75 (11th Cir. 2002) (exterior signage prevented finding of abandonment as a matter of law).

The question is whether the removal of the steer's head is a material alteration.  Defendants assert that there is no material alteration because the dominant element of the

---

[5]  Plaintiffs contend that this exterior sign is not a "service mark usage" because it does not show an association between the mark and the services for which registration was sought. D.E. 139, pp. 7-8.  *See In re the Sorting Table, LLC*, 77582484, 2012 WL 2364340, *2 (Trademark Tr. & App. Bd. June 11, 2012); *In re Duratech Industries, Inc.*, 13 USPQ2d 2052, 1989 WL 274420 (Trademark Tr. & App. Bd. November 17, 1989).  Because the Court holds that the alleged trademark usage involves a material alteration, the Court need not reach this issue.

Bongo trademark is the word, "LongHorn" and the descriptive terminology, "steaks." Bongo, himself, is "inconsequential." D.E. 125, p. 30. First, Defendants had to disclaim any trademark in the word "steaks." D.E. 126-3, -4, -7, -8. Thus that word cannot be a dominant feature.

Second, as discussed in the Court's ruling on tacking (D.E. 135), because the Bongo trademarks are composite marks, it is not just the word "LongHorn" that is important or dominant. Even the change from the Bongo to the Minimalist steer's head was found to constitute a material alteration after considering all of the authorities cited. Surely the elimination of the steer's head altogether is a material alteration. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 261 (5th Cir. 1980) (stylistic elements in a composite trademark require it to be considered as a whole); *Paris Glove of Canada, Ltd. v. SBC/Sporto Corp.*, 84 U.S.P.Q. 1856, 2007 WL 2422997 (Trademark Tr. & App. Bd. August 22, 2007) (same). The Court holds that the signage on the Florida restaurants does not constitute usage of the Bongo trademarks in the three years preceding this action.

### G. Intent to Resume

Having found that none of the proffered usages of the Defendants' first and second "Bongo" trademarks are "uses in commerce" as defined by the Lanham Act, the Court finds that the Plaintiffs have satisfied their initial burden of proof. 15 U.S.C. § 1127. The only argument available to the Defendants to support maintaining those marks is an "intent to resume" usage. *Id*. Defendants first fault Plaintiffs for not offering evidence against Defendants' intent to resume use of the Bongo trademarks. This argument is

moot because, if Plaintiffs succeed in showing nonuse for three years, they have made a *prima facie* case that includes an inference of intent not to resume. *Id*. They do not have any further burden until Defendants defeat the three-year nonuse allegation or provide some evidence of intent to resume.

Second, Defendants rely on their evidence of actual use, which they claim demonstrates not only current use but is either evidence of intent to resume or makes intent to resume a moot point. Because the Court has determined that Defendants' evidence of continuing use does not qualify as "use in commerce" or is not a use of the trademarks in unaltered form, then that same evidence is incapable of showing an intent to resume and does not make the need for evidence of such intent a moot point.

Last, Defendants rely on the Declaration of Shelly Welch (D.E. 125-4, p. 2), reciting a plan to place the Bongo versions of their trademarks on their website and on their children's menu in the next few months—well after the three-year window at issue here. D.E. 125, p. 35. Token use or a use arranged simply to reserve rights in a service mark are not valid usages and an intent to make such use does not necessarily qualify as an intent to resume active use in commerce even when formulated within the three-year window. *See* 15 U.S.C. § 1127; *Exxon Corp. v. Humble Exploration Co*., 695 F.2d 96, 100 (5th Cir. 1983).

With respect to the *Exxon* case, on remand the district court evaluated the evidence with specific attention to the "intent to resume" and found that the evidence of intent was sufficient to defeat the *prima facie* case of abandonment. *Exxon Corp. v. Humble Exploration Co*., 592 F.Supp. 1226 (N.D.Tex. 1984) (*Exxon II*). The court noted several

factors that affected the determination of intent that arose in other abandonment cases. As was true in *Exxon II*, the Defendants in this case were not forced out of business or deprived of the use of the Bongo trademarks by matters outside their control; they intentionally undertook to evolve their brand, making it more "upscale" with a wider appeal. This factor weighs against Defendants' intent to resume. As in *Exxon II*, there are no regulatory barriers to the use of the Bongo trademarks. This factor weighs against Defendants' intent to resume.

Where this case departs from the *Exxon II* scenario is on the issue that salvaged Exxon's intent to resume: ongoing efforts from the time the trademark changed to make active commercial use of the old trademark. Here, the evidence of the Defendants' past shows systematic abandonment of the Bongo trademarks. The appearances that remain are either nostalgic décor and historical retrospectives or vestiges of the materially altered trademark that, without Bongo, were not so offensive to the new branding as to require removal.

There is no evidence, as there was in *Exxon II*, of an active plan orchestrated by the marketing department, beginning at the time the trademarks were replaced and continuing until the objective was achieved, of reviving the old trademark in commercial use. Instead, Defendants rely on the declaration of Shelly Welch, who states: "Defendants have concrete, current plans to further their current use of the versions of their LONGHORN mark depicted below: [picturing the Bongo trademarks]. For example, Defendants will be placing these versions of their LONGHORN mark on Defendants' website located at www.longhornsteakhouse.com in the next few months."

She also indicated the intent to create a new children's menu using the old logos. This is the entirety of the Defendants' proffer on this issue.

Defendants' evidence is clearly insufficient to raise a fact issue on intent to resume use of the Bongo trademarks because: (1) it fails to show any effort or intent formulated within the three-year window; (2) it includes statements in the most conclusive of terms both with respect to the intent and the proposed future use; and (3) it fails to show any association between the trademark and any bona fide commercial transaction. The evidence is insufficient to raise a fact issue that Defendants intended to resume active commercial use of either of the Bongo-styled trademarks between May 11, 2009 and May 11, 2012.

## CONCLUSION

For the reasons set out above, the Court DENIES Defendants' Motion to Strike the Declaration of Ronald B. Whitten (D.E. 132). The Court GRANTS Plaintiffs' Motion for Partial Summary Judgment on Defendants' Abandonment of Early Marks (D.E. 103). It is therefore ORDERED that:

1. Defendants' First Mark is abandoned;
2. Reg. No. 1,320,021 is cancelled;
3. Defendants' Second Mark is abandoned; and
4. Reg. No. 1,741,952 is cancelled.

ORDERED this 5th day of June, 2013.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE